## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## EVANSVILLE DIVISION

| | | |
|---|---|---|
| JAMES MONROE, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | Case No. 3:18-cv-00132 |
| v. | § § § | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| ELMER BUCHTA TRUCKING LLC; RAYMOND WRIGHT, individually and as officer, director, shareholder, and/or principal of ELMER BUCHTA TRUCKING LLC; J. KIRK WRIGHT, individually and as officer, director, shareholder, and/or principal of ELMER BUCHTA TRUCKING LLC; LEONARD MEHRINGER, individually and as officer, director, shareholder, and/or principal of ELMER BUCHTA TRUCKING LLC; and WRIGHT FAMILY INVESTMENT GROUP, INC., | § § § § § § § § § § § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff JAMES MONROE ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, COHEN & MALAD, LLP and VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from Defendants, ELMER BUCHTA TRUCKING LLC ("Defendant Elmer"); RAYMOND WRIGHT ("Defendant R. Wright"), individually and as officer, director, shareholder, and/or principal of ELMER BUCHTA TRUCKING LLC; J. KIRK WRIGHT ("Defendant J. Wright"), individually and as officer, director, shareholder, and/or principal of ELMER BUCHTA TRUCKING LLC; LEONARD MEHRINGER ("Defendant Mehringer"), individually and as officer, director,

shareholder, and/or principal of ELMER BUCHTA TRUCKING LLC; and WRIGHT FAMILY INVESTMENT GROUP, INC. (Defendant "WFIG") (collectively, "Defendants"), for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, for violation of the Indiana Minimum Wage Law ("Title 22"), Ind. Code §§ 22-2-2-1 *et seq.*, for violation the Indiana Deceptive Consumer Sales Act ("Title 24"), Ind. Code §§ 24-5-.05-1 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. Defendants, who are headquartered in Otwell, Indiana, are engaged in the trucking industry. Particularly, they specialize in hauling coal, limestone, and aggregate across the Midwest. Defendants employed Plaintiff and all others similarly situated as Truck Drivers (collectively, the "Drivers") throughout their six (6) Indiana terminals. In addition to their trucking business, Defendants operate a "professional driving school," which allegedly trains Drivers without a commercial driver's license ("CDL") for their CDL test.

2. Defendants compensate Drivers on a weight hauled percentage basis, which did not amount to the Federal and the Indiana State statutorily required minimum wage for all hours worked. Moreover, Defendants deduct, for their benefit, from the Drivers' paychecks for training, equipment, and drug test costs, which drove the Drivers' hourly rate below or further below the Federal and the Indiana State statutorily required minimum of $7.25 per hour.

3. Plaintiff brings this action on behalf of himself and those similarly situated as a result of Defendants' willful violation of federal and state wage and hour laws, as set forth herein.

4. Plaintiff also brings this action on behalf of himself and those similarly situated as a result of Defendant Elmer's and Defendant WFIG's willful violations of the Indiana Deceptive Consumer Sales Act.

5.     First, Plaintiff brings this action, pursuant to 29 U.S.C. § 216(b), on behalf of a collective of persons who are and were employed by Defendants as Truck Drivers during the past three (3) years through the final date of the disposition of this action who are/were not paid the statutorily required minimum rate of $7.25 per hour for all hours worked and are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid minimum wages, (iii) liquidated damages, (iv) interest, (v) attorneys' fees and costs; and (vi) such other and further relief as this Court finds necessary and proper.

6.     Second, Plaintiff brings this action, pursuant to Indiana Code 22-2-2-9, on behalf of a collective of persons who are and were employed by Defendants as Truck Drivers during the past three (3) years through the final date of the disposition of this action who are/were not paid the statutorily required minimum rate of $7.25 per hour for all hours worked and are entitled to recover: (i) unpaid and incorrectly paid wages for all hours worked in a workweek, as required by law, (ii) unpaid minimum wages, (iii) liquidated damages, (iv) interest, (v) attorneys' fees and costs; and (vi) such other and further relief as this Court finds necessary and proper.

7.     Third, Plaintiff brings this action, pursuant to Fed. R. Civ. P. 23, on behalf of a class of persons who were enrolled in Defendants' "professional driving school" within the past two (2) years and are entitled to (i) all damages available pursuant to Ind. Code §§ 24-5-0.5-4(a); and (ii) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act

of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under 29 U.S.C. §§ 201 *et seq*.

9.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq*., in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (c), in that Defendants maintain facilities, conduct business, and reside in this district.

10.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## **THE PARTIES**

11.     Plaintiff is a citizen of Indiana and resides in Elnora, Indiana.

12.     At all relevant times, Plaintiff was an "employee" within the meaning of the FLSA and Title 22.

13.     At all relevant times, Plaintiff was a "consumer" within the meaning of Title 24.

14.     Defendant Elmer is incorporated under the laws of Indiana and is headquartered in Otwell, Indiana.

15.     Defendant Elmer transacts business in Indiana and within this judicial district by currently and formerly employing Plaintiff and those similarly situated as Truck Drivers within Indiana and this judicial district.  Defendant Elmer also operates and maintains multiple facilities within Indiana, including three (3) within Pike County, Indiana.

16.     Defendant Elmer has at all relevant times been an "employer" covered by the FLSA and Title 22.

17.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Elmer exceeds $500,000.00 and thus subjects Defendant Elmer to the FLSA's minimum wage requirements.

18.     Upon information and belief, Defendant Elmer is engaged in interstate commerce.  This independently subjects Defendant Elmer to the minimum wage requirements of the FLSA.

19.     Defendant Elmer solicits consumer transactions.

20.     Defendant Elmer has at all relevant times been a supplier covered by Title 24.

21.     Defendant R. Wright is a principal and/or president of Defendant Elmer and Defendant WFIG.

22.     Upon information and belief, Defendant R. Wright's job duties included, among other things, overseeing and managing Defendant Elmer's employees, including the Drivers. Upon information and belief, Defendant R. Wright has the power to control the terms and conditions of the Drivers' employment, including hiring and firing them. Upon information and belief, Defendant R. Wright set the corporate policies of Defendant Elmer.

23.     Upon information and belief, Defendant R. Wright resides within Evansville, Indiana.

24.     Defendant J. Wright is a principal and/or vice president of Defendant Elmer and Defendant WFIG.

25.     Upon information and belief, Defendant J. Wright's job duties included, among other things, overseeing and managing Defendant Elmer's employees, including the Drivers. Upon information and belief, Defendant J. Wright has the power to control the terms and

conditions of the Drivers' employment, including hiring and firing them. Upon information and belief, Defendant J. Wright set the corporate policies of Defendant Elmer.

26.     Upon information and belief, Defendant J. Wright resides within Evansville, Indiana.

27.     Defendant Mehringer is a principal and/or Manager of Defendant Elmer and Defendant WFIG.

28.     Upon information and belief, Defendant Mehringer's job duties included, among other things, overseeing and managing Defendant Elmer's employees, including the Drivers. Upon information and belief, Defendant Mehringer has the power to control the terms and conditions of the Drivers' employment, including hiring and firing them. Upon information and belief, Defendant Mehringer set the corporate policies of Defendant Elmer.

29.     Upon information and belief, Defendant Mehringer resides within Indiana.

30.     Defendant WFIG is incorporated under the laws of Indiana and is headquartered in Otwell, Indiana.

31.     Defendant WFIG transacts business in Indiana and within this judicial district by currently and formerly employing Plaintiff and those similarly situated as Truck Drivers within Indiana and this judicial district.  Defendant WFIG also operates and maintains multiple facilities within Indiana, including one (1) within Pike County, Indiana.

32.     Defendant WFIG has at all relevant times been an "employer" covered by the FLSA.

33.     Upon information and belief, the amount of qualifying annual volume of business for Defendant WFIG exceeds $500,000.00 and thus subjects Defendant WFIG to the FLSA's minimum wage requirements.

34.     Defendants employ over ten (10) employees.

35.     Upon information and belief, Defendant WFIG is engaged in interstate commerce.  This independently subjects Defendant WFIG to the minimum wage requirements of the FLSA.

36.     Defendant WFIG solicits consumer transactions.

37.     Defendant WFIG has at all relevant times been a supplier covered by Title 24.

38.     Defendant Elmer is a wholly owned subsidiary of Defendant WFIG.

39.     Defendant Elmer and Defendant WFIG share the same principal office address— 2174 N. State Road 257, Otwell, Indiana 47564.

40.     Defendants jointly employed Plaintiff and those similarly situated by employing or acting in the interest of employer towards Plaintiff and those similarly situated directly or indirectly, jointly or severally, including without limitation, by controlling and directing the terms of employment and compensation, by formulating and implementing policies, hiring and/or firing all those similarly situated employees, by creating work schedules, and by suffering all those similarly situated employees to work.

41.     Defendant Elmer and Defendant WFIG are also a single integrated enterprise as WFIG wholly owns Defendant Elmer. Furthermore, they share the same principals and/or officers; they share the same principal office; they have an interrelation of operations; they have a centralized control of labor and personnel relations; and they have a common ownership and financial control.

7

## STATEMENT OF FACTS

### I.      General Facts

42.     Defendants own and operate a trucking company doing business as "Elmer Buchta Trucking."

43.     Defendants primarily haul coal, limestone, and aggregates within the state of Indiana and Kentucky.

44.     Defendants are headquartered in Otwell, Indiana. Defendants also own and operate five (5) satellite terminals in Indiana, which are located in the cities of Channelburg, Chandler, Lamar, Linton, and Petersburg.

45.     Defendants' employ approximately one hundred and forty-five (145) Truck Drivers.

46.     The Drivers' primary job duties include driving semi-trucks and hauling, among other things, coal, limestone, and aggregate from mining facilities to purchasers.

47.     If a Driver is enrolled in Defendants' "professional driving school" he is paid on an hourly basis.

48.     Drivers not enrolled in Defendants' "professional driving school" are paid approximately twenty-seven percent (27%) of the price per ton that they hauled per workweek.

49.     By way of example, if a Driver's net tonnage was ten (10) tons and the cost per ton was $1.00, that Driver—no matter how many hours the haul took—was paid a total $2.70 for the haul.

50.     The Drivers are paid via check or direct deposit.

51.     The Drivers are paid weekly.

52.     A Driver's typical schedule is five (5) to six (6) days per workweek.

53.    A Driver's typical workday lasts approximately ten (10) to fourteen (14) hours.

54.    Accordingly, the Drivers work approximately fifty (50) to eighty-four (84) hours per workweek.

55.    The Drivers record the time they "clocked in" and "clocked out" on Defendants' computerized time recording system.

56.    The Drivers also record the hours that they worked on report sheets titled: "TRUCK DRIVERS DAILY REPORTS."

   **a.   Facts Pertaining to Defendants' Professional Driving School**

57.    Defendant Elmer and Defendant WFIG operate and maintain a "professional driving school."

58.    The "professional driving school" was titled: "Elmer Buchta Trucking Professional Driving School."

59.    The purpose of the "professional driving school" is to prepare Drivers without a CDL for their CDL test.

60.    The "professional driving school" is not a licensed and/or certified CDL driving school.

61.    The "professional driving school" lasts approximately eight (8) weeks.

62.    The "professional driving school" is located at Defendants' headquarters in Otwell, Indiana.

63.    Defendants advertise the "professional driving school" on their website: www.elmerbuchta.com/school.htm.

64.    The online advertisement promises the following:

> You have to sign a contract and have it co-signed by someone other than your spouse that works full time

> . . . . This contract states that you will stay
> employed with us at least one (1) year from the date
> of graduation or you will pay us $4,800 . . . . This
> $4,800 is not prorated so if you leave early you will
> pay the total $4,800 but if you leave after one (1)
> year you owe nothing.

65.     The online advertisement also promises the following:

> You will be paid $8 . . . an hour while being trained.
> Over 40 hours you will be paid $12 . . . an hour.

### b.  Facts Pertaining to Defendants' Minimum Wage Violations

### i.     Weight Hauled Percentage Pay

66.     As stated above, Defendants compensate Drivers not enrolled in the "professional driving school" on a weight hauled percentage basis such that the Drivers are compensated approximately twenty-seven percent (27%) of the price per ton they haul.

67.     The weight hauled percentage pay resulted in the Drivers earning an hourly rate below the Federal and Indiana State statutory minimum of $7.25 for all hours worked.

68.     For example, from April 1, 2018, to April 7, 2018, Plaintiff worked approximately sixteen and one-fourth (16 ¼) hours. For this workweek, Plaintiff was compensated a total of $101.46, equating to an hourly rate of $6.24—well below the Federal and Indiana State minimum.

69.     As for another example, from April 8, 2018 to April 14, 2018, Plaintiff worked approximately thirty-four and one-fourth (34 ¼) hours. For this workweek, Plaintiff was compensated a total of $237.52, equating to an hourly rate of $6.95—well below the Federal and Indiana State minimum.

70.     Accordingly, Drivers are not compensated consistent with the Federal and the Indiana State statutory minimum wage of $7.25 per hour for all hours worked.

### ii.    The Deductions

71.    Defendants make unlawful deductions from the Drivers' paychecks.

72.    Upon hiring, the Drivers are required to take a drug test, which costs Defendants $70.00 per test.

73.    Defendants deduct, on average, approximately $10.00 from each of the Driver's paychecks until the cost of the drug test is fully reimbursed.

74.    The drug test deduction is listed on the Drivers' paychecks as "Pre-employment Screenings."

75.    Defendants also issued the Drivers a Bluetooth headset, which costs Defendants $70.00 per Bluetooth headset.

76.    Defendants deduct, on average, approximately $17.50 from each of the Driver's paychecks until the cost of the Bluetooth headset is fully reimbursed.

77.    The Bluetooth headset deduction was listed on the Drivers' paychecks as "Hands Free Device."

78.    Moreover, despite advertising that it is free of charge, Defendants' deduct, on average, approximately $50.00 from each of the Driver's paycheck for the "professional driving school."

79.    Defendants' "professional driving school" deduction is listed on the Drivers' paystubs as "Training Program."

80.    The aforementioned deductions reduced the Drivers' hourly rate below or further below the Federal and the Indiana State statutory minimum of $7.25 per hour for all hours worked.

81.     For example, from April 1, 2018 to April 7, 2018, Plaintiff was paid a total of $101.46 for sixteen and one-fourth (16 ¼) hours of work. This equates to an hourly rate of $6.24. Moreover, Defendants deducted $50.00 from this paycheck for the "professional driving school," which reduced Plaintiff's pay to $51.46, equating to an hourly rate of $3.17—well below the Federal and Indiana State minimum.

82.     As for another example, from April 8, 2018 to April 14, 2018, Plaintiff was paid a total of $237.52 for thirty-four and one-fourth (34 ¼) hours of work. This equates to an hourly rate of $6.24. Moreover, Defendants deducted $109.09 from this paycheck for the "professional driving school," which reduced Plaintiff's pay to $128.43, equating to an hourly rate of $3.74— well below the Federal and Indiana State minimum.

83.     The aforementioned deductions are for the benefit of Defendants.

84.     Accordingly, Defendants make unlawful deductions from the Drivers' paychecks, which drove their hourly rate below or further below the Federal and Indiana State statutory minimum of $7.25 per hour for all hours worked.

### c.  Facts Pertaining to Defendant Elmer's and Defendant WFIG's Violations of the Indiana Deceptive Consumer Sales Act

85.     Enrollment into Defendant Elmer's and Defendant WFIG's "professional driving school" is a consumer transaction.

86.     Defendant Elmer and Defendant WFIG advertise the "professional driving school" on their website, www.elmerbuchta.com/school.htm, that the "professional driving school" is free of charge so long as a Driver remains employed as a Truck Driver for one (1) year.

87.     Again, despite advertising that it was free, prior to the one year anniversary of a Driver's employment, Defendant's Elmer and Defendant WFIG deduct, on average, approximately $50.00 from each of a Driver's paychecks for the "professional driving school."

88.     Defendant Elmer's and Defendant WFIG's advertisement does not disclose the payroll deductions.

89.     Defendant Elmer's and Defendant WFIG's advertisement does not disclose that an approximate $50.00 per week deduction is required for enrollment in the "professional driving school"

90.     Defendant Elmer and Defendant WFIG further advertises on the website that during the "professional driving school" a Driver is to be paid $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek.

91.     The Drivers enrolled into the "professional driving school" do not earn per 8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek.

92.     As a result of the "professional driving school," Bluetooth headset, and drug test deductions, Drivers enrolled in the "professional driving school" earn less than per 8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek.

93.     For example, from October 8, 2017 to October 15, 2017, Plaintiff worked forty-nine and three-fourths (49 ¾) hours. If Plaintiff was paid $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek he should have earned $437.00. Instead, Plaintiff had $10.00 deducted from his paycheck for his drug test and $10.00 deducted for the professional driving school. Accordingly, Plaintiff was paid only $417.00—equating to an hourly rate below what was promised by Defendant Elmer's and Defendant WFIG's advertisement.

94.     Defendant Elmer's and Defendant WFIG's "professional driving school" and advertisement is an incurable deceptive act and/or omission that is a part of a scheme, artifice, or device utilized with intent to defraud or deceive persons by luring them into the "professional driving school" through an advertisement promising that it was free and that they would earn $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek while enrolled in the "professional driving school.

95.     Upon information and belief, Defendant Elmer's and Defendant WFIG's violations of Title 24 is intentional and/or willful.

96.     Defendant Elmer's and Defendant WFIG's violations of Title 24 is an incurable act.

97.     Upon information and belief, Defendant Elmer's and Defendant WFIG's violations of Title 24 are part of a scheme and/or artifice to defraud and/or mislead Drivers into enrolling into the "professional driving school."

**II.     Facts Pertaining to Plaintiff**

98.     In or around September 2017, Plaintiff matriculated into Defendants' "professional driving school" to obtain his CDL.

99.     In or around October 2017, Plaintiff obtained his CDL and became a Truck Driver for Defendants.

100.    As a Truck Driver, Plaintiff was paid on a weight hauled percentage basis.

101.    Plaintiff was paid approximately twenty-seven percent (27%) of the price per ton that he hauled per workweek.

102.    As a result of being paid on a weight hauled percentage basis, Plaintiff was not paid the Federal and Indiana State minimum of $7.25 per hour for all hours worked.

103.    Defendants made unlawful deductions from Plaintiff's paychecks for the "professional driving school," his drug test, and his Bluetooth headset.

104.    These deductions drove his hourly rate below or further below the Federal and Indiana State minimum wage of $7.25 per hour for all hours worked.

105.    Defendants failed to pay Plaintiff the Federal and Indiana State minimum wage of $7.25 per hour for all hours worked.

106.    Plaintiff was promised by Defendant Elmer's and Defendants WFIG's "professional driving school" advertisement that his training was free of charge if he remained employed with them for one (1) year after enrolling in the professional driving school. Plaintiff was also promised compensation of $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek while enrolled in the "professional driving school."

107.    As stated above, Defendant had, on average, approximately $50.00 deducted from each of his pay checks for the "professional driving school."

108.    Plaintiff was not compensated $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek while enrolled in the "professional driving school."

109.    Plaintiff was a victim of Defendant Elmer's and Defendant WFIG's deceptive act and/or omission pertaining to his consumer transaction with him.

110.    On or around April 16, 2018, Plaintiff resigned from his employment with Defendants because of their continual violations of the FLSA, Title 22, and Title 24.

## FLSA MINUMUM WAGE COLLECTIVE ALLEGATIONS

111.     Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following collective:

> All Truck Drivers employed by Defendants during the past three (3) years through the final date of disposition of this action who are/were not compensated by Defendants the Federal statutory minimum wage of $7.25 per hour for all hours worked.

112.     At all relevant times, Plaintiff was similarly situated to all such individuals in the proposed FLSA Minimum Wage Collective[1] because, while employed by Defendants, Plaintiff and FLSA Minimum Wage Plaintiffs performed similar tasks, are subject to the same laws and regulations, are paid in the same or similar manner, and are paid the same or similar rate. Moreover, Defendants failed to pay Plaintiff and the Minimum Wage Plaintiffs the Federal statutory minimum wage for all hours worked in the same or similar manner.

113.     Defendants are and have been aware of the requirement to pay Plaintiff and members of the FLSA Minimum Wage Plaintiffs at an hourly rate of $7.25, yet willfully chose not to.

114.     The FLSA Minimum Wage Plaintiffs, under Plaintiff's FLSA claim, are readily discernable and ascertainable.  All FLSA Minimum Wage Plaintiffs' contact information is readily available in Defendants' records.  Notice of this collective action can be made as soon as the Court determines.

115.     The members of the FLSA Minimum Wage Collective are too numerous to join in a single action, necessitating collective recognition.

116.     All questions relating to Defendants' violation of the FLSA share a common factual basis with Plaintiff.  No claims under the FLSA relating to Defendants' failure to pay

---

[1]          Hereinafter referred to as the FLSA Minimum Wage Plaintiffs.

minimum wage for all hours worked are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of the proposed collective.

117.    Plaintiff will fairly and adequately represent the interests of the FLSA Minimum Wage Plaintiffs and has no interests conflicting with the collective.

118.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate members of the proposed collective's claims under the FLSA.

119.    Plaintiff's attorneys are familiar and experienced with collective/class action litigation as well as employment and labor law litigation.

120.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by saving the Court's time and efforts and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Minimum Wage Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of members of the proposed collective's interests without their knowledge or contribution.

121.    The questions of law and fact are nearly identical for all FLSA Minimum Wage Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the FLSA will undoubtedly continue.

## INDIANA MINIMUM WAGE COLLECTIVE ALLEGATIONS

122.    Plaintiff also seeks to bring this suit as a collective action pursuant to Indiana Code 22-2-2-9 on his own behalf as well as those in the following collective:

> All Truck Drivers employed by Defendants during the past three (3) years through the final date of disposition of this action who are/were not compensated by Defendants the Indiana State statutory minimum wage of $7.25 per hour for all hours worked.

123.    At all relevant times, Plaintiff was similarly situated to all such individuals in the proposed Indiana Minimum Wage Collective[2] because, while employed by Defendants, Plaintiff and Indiana Minimum Wage Plaintiffs performed similar tasks, are subject to the same laws and regulations, are paid in the same or similar manner, and are paid the same or similar rate. Moreover, Defendants failed to pay Plaintiff and the Minimum Wage Plaintiffs the Indiana State statutory minimum wage for all hours worked in the same or similar manner.

124.    Defendants are and have been aware of the requirement to pay Plaintiff and members of the Indiana Minimum Wage Plaintiffs at an hourly rate of $7.25, yet willfully chose not to.

125.    The Indiana Minimum Wage Plaintiffs, under Plaintiff's Title 22 claim, are readily discernable and ascertainable.   All Indiana Minimum Wage Plaintiffs' contact information is readily available in Defendants' records.   Notice of this collective action can be made as soon as the Court determines.

126.    The members of the Indiana Minimum Wage Collective are too numerous to join in a single action, necessitating collective recognition.

127.    All questions relating to Defendants' violation of the Title 22 share a common factual basis with Plaintiff.   No claims under the Title 22 relating to Defendants' failure to pay minimum wage for all hours worked are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of the proposed collective.

128.    Plaintiff will fairly and adequately represent the interests of the Indiana Minimum Wage Plaintiffs and has no interests conflicting with the collective.

---

[2]    Hereinafter referred to as the Indiana Minimum Wage Plaintiffs.

129.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate members of the proposed collective's claims under the Title 22.

130.    Plaintiff's attorneys are familiar and experienced with collective/class action litigation as well as employment and labor law litigation.

131.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by saving the Court's time and efforts and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual Indiana Minimum Wage Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of members of the proposed collective's interests without their knowledge or contribution.

132.    The questions of law and fact are nearly identical for all Indiana Minimum Wage Plaintiffs and therefore proceeding as a collective action is ideal.  Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendants' continued violations of the Title 22 will undoubtedly continue.

## RULE 23 CLASS ACTION ALLEGATIONS

133.    Plaintiff additionally seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous two (2) years, are/were subjected to violations of Title 24.

134.    The Class which Plaintiff seeks to define includes:

> All Truck Drivers employed by Defendant Elmer and/or Defendant WFIG during the past two (2) years through the final date of disposition of this action who are/were enrolled in the "Elmer Buchta Trucking Professional Driving School."

135.    The number of class members protected by Title 24 and who have suffered under Defendant Elmer's and Defendant WFIG's violation of Title 24, as set forth herein, is,

upon information and belief, well in excess of forty (40) and is therefore too numerous to join in a single action, necessitating class recognition.

136.    All questions relating to the Class's allegations under Title 24 share a common factual basis with those raised by the claims of Plaintiff.  No claims under Title 24 relating to the Defendant Elmer's and Defendant WFIG's deceptive acts and/or omissions of falsely advertising that the "professional driving school" was free of charge conditioned on one (1) year of employment and that compensation during the "professional driving school" was $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek to defraud or mislead Truck Drivers into the "professional driving school" are specific to Plaintiff or any proposed Indiana Consumer Class member and the claims of Plaintiff are typical of those asserted by the proposed Indiana Consumer Class.

137.    Plaintiff will fairly and adequately represent the interests of all members of the proposed Indiana Consumer Class.

138.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendant Elmer and Defendant WFIG violated Title 24 by committing unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transition to all members of the proposed Indiana Consumer Class.

139.    The class members of the proposed Indiana Consumer Class are readily discernable and ascertainable. Contact information for all members of the proposed Indiana Consumer Class[3] is readily available from Defendant Elmer and Defendant WFIG since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under Fed. R. Civ. P. 23 requirements.

---

[3]        Hereinafter referred to as the Indiana Consumer Plaintiffs.

140.    Plaintiff asserts these claims on his own behalf as well as on behalf of the Indiana Consumer Plaintiffs through his attorneys who are experienced in class action.

141.    Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed Indiana Consumer Class and has no interests conflicting with those of the Class.

142.     The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a Consumer Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the Class's interests without their knowledge or contribution.

143.     The questions of law and fact that are nearly identical for all Indiana Consumer Plaintiffs make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Indiana Consumer Plaintiffs, continued violations of Title 24 will undoubtedly continue.

144.    Plaintiff and the Indiana Consumer Plaintiffs are/were subjected to the same unlawful practice by Defendant Elmer and Defendant WFIG, thus the same questions of law and/or fact will apply to Plaintiff and the Indiana Consumer Plaintiffs.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, Made by Plaintiff on Behalf of All
FLSA Minimum Wage Plaintiffs
(Against all Defendants)**

145.    Plaintiff and the FLSA Minimum Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

146.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiff and the FLSA Minimum Wage Plaintiffs the

statutorily required minimum wage by compensating them on a weight hauled percentage basis that frequently equated to an hourly rate less than the statutory minimum and by deducting training, equipment, and drug test costs from their paychecks, which drove their hourly rate below or further below the minimum wage in violation of the FLSA.

147.    Plaintiff and the FLSA Minimum Wage Plaintiffs are entitled to payment at the statutory minimum wage for all hours worked.

148.    Upon information and belief, Defendants knowingly failed to pay Plaintiff and the FLSA Minimum Wage Plaintiffs the statutory minimum wage for all hours worked.

149.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

150.    Defendants' conduct was in violation of the Fair Labor Standards Act.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF The Indiana Minimum Wage Law, Ind. Code §§ 22-2-2-1 *et seq.*, Made by Plaintiff on Behalf of All Indiana Minimum Wage Plaintiffs (Against all Defendants)

151.    Plaintiff and the Indiana Minimum Wage Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

152.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiff and the Indiana Minimum Wage Plaintiffs the statutorily required minimum wage by compensating them on a weight hauled percentage basis that frequently equated to an hourly rate less than the statutory minimum and by deducting training, equipment, and drug test costs from their paychecks, which drove their hourly rate below or further below the minimum wage in violation of Title 22.

153.    Plaintiff and the Indiana Minimum Wage Plaintiffs are entitled to payment at the statutory minimum wage for all hours worked.

154.    Upon information and belief, Defendants knowingly failed to pay Plaintiff and the Indiana Minimum Wage Plaintiffs the statutory minimum wage for all hours worked.

155.    Defendants' conduct was willful and lasted for the duration of the relevant time period.

156.    Defendants' conduct was in violation of the Indiana Minimum Wage Law.

**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-.05-1 *et seq.*, Made by**
**Plaintiff on Behalf of All Indiana Consumer Plaintiffs**
**(Against Defendant Elmer and Defendant WFIG)**

157.    Plaintiff and the Indiana Consumer Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

158.    Defendant Elmer and Defendant WFIG are "suppliers" pursuant to Title 24.

159.    Enrollment in the "professional driving school" is a consumer transaction.

160.    Defendant Elmer and Defendant WFIG advertised that the "professional driving school" was free of charge conditioned on one (1) year of employment and that compensation during the "professional driving school" was $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek.

161.    Defendant Elmer and Defendant WFIG deducted approximately $50.00 from each of the Plaintiff's and the Indiana Consumer Plaintiffs' paychecks for the "professional driving school."

162.    Plaintiff and the Indiana Consumer Plaintiffs were not paid $8.00 per hour and $12.00 per hour for all hours worked in excess of forty (40) hours per workweek while enrolled in the "professional driving school."

163.    Defendant Elmer's and Defendant WFIG's committed an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction against Plaintiff and the Indiana Consumer Plaintiffs.

164.    Defendant Elmer's and Defendant WFIG's conduct was in violation of the Indiana Deceptive Consumer Sales

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all FLSA Minimum Wage, Indiana Minimum Wage Plaintiffs, and Indiana Consumer Plaintiffs, employed by Defendants demand judgment against Defendants as follows:

A.      At the earliest possible time, Plaintiff should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the purported collective defined herein.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they are/were denied compensation at the federal statutory minimum for all hours worked;

B.      Designation of Plaintiff as representative of the Collectives and Rule 23 Class defined herein, and Plaintiff's counsel as Collective and Class Counsel;

C.      Equitable tolling of the FLSA statute of limitations as a result of Defendants' failure to post requisite notices under the FLSA;

F.      Certification of this action as class actions pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed Indiana Consumer Class members under the Indiana Deceptive Consumer Sales Act;

G.      Demand for a jury trial on these issues to determine liability and damages;

H.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

I.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; the Indiana Minimum Wage Law, Ind. Code §§ 22-2-2-1 *et seq.*; and the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-.05-1 *et seq.*;

J.      All damages which Plaintiff, all FLSA Minimum Wage Plaintiffs, and all Indiana Minimum Wage Plaintiffs have sustained as a result of Defendants' conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

K.      All damages which Plaintiff and all Indiana Consumer Plaintiffs have sustained as a result of Defendants' conduct pursuant to §§ 24-5-.05-4(a).

I.      An award to Plaintiff, all FLSA Minimum Wage Plaintiffs, and all Indiana Minimum Wage Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

J.      An award to Plaintiff, all FLSA Minimum Wage Plaintiffs, and all Indiana Minimum Wage Plaintiffs representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

K.      An award to Plaintiff, all FLSA Minimum Wage Plaintiffs, and all Indiana Minimum Wage Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

L.      An award to Plaintiff, all FLSA Minimum Wage Plaintiffs, all Indiana Minimum Wage Plaintiffs, and all Indiana Consumer Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

M.      Pre-judgment and post-judgment interest, as provided by law; and

N.      Granting Plaintiff, all FLSA Minimum Wage Plaintiffs, all Indiana Minimum Wage Plaintiffs, and all Indiana Consumer Plaintiffs other and further relief as this Court finds necessary and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.


Dated:   July 26, 2018

Respectfully submitted,

s/Richard E. Shevitz
Irwin B. Levin
Richard E. Shevitz
Vess A. Miller
**Cohen & Malad, LLP**
1 Indiana Square, #1400
Indianapolis, Indiana 46204
(317) 636-6481 (phone)
(317) 793-2252 (fax)

James Vagnini (*pro hac vice to be filed*)
Robert R. Barravecchio (*pro hac vice to be filed*)
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (facsimile)


**ATTORNEYS FOR PLAINTIFFS**